1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SAMUEL ANDERSON,

11          Plaintiff,                No. 2: 12-cv-0261 MCE KJN P

12      vs.

13   MATTHEW TATE, et al.,

14          Defendants.              <u>ORDER</u>

15   _____/

16   I.  <u>Introduction</u>

17          Plaintiff is a state prisoner proceeding without counsel.  Plaintiff seeks relief

18   pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to

19   28 U.S.C. § 1915.  This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1)

20   and Local Rule 302.

21          Plaintiff originally filed this action in the United States District Court for the

22   Northern District of California.  On January 31, 2012, the Northern District transferred the

23   instant action to this court.

24          Plaintiff submitted a declaration that makes the showing required by

25   28 U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

26   ////

1

1           Plaintiff is required to pay the statutory filing fee of $350.00 for this action.

2   28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing

3   fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court

4   will direct the appropriate agency to collect the initial partial filing fee from plaintiff's prison

5   trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to

6   make monthly payments of twenty percent of the preceding month's income credited to

7   plaintiff's prison trust account.  These payments will be forwarded by the appropriate agency to

8   the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing

9   fee is paid in full.  28 U.S.C. § 1915(b)(2).

10           The court is required to screen complaints brought by prisoners seeking relief

11   against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

12   § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

13   claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

14   granted, or that seek monetary relief from a defendant who is immune from such relief.

15   28 U.S.C. § 1915A(b)(1),(2).

16           A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

17   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

18   (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

19   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

20   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

21   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

22   Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

23   2000) ("a judge may dismiss [in forma pauperis] claims which are based on indisputably

24   meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

25   1227.

26   ////

1           Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and

2   plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

3   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic</u>

4   <u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47

5   (1957)).  In order to survive dismissal for failure to state a claim, a complaint must contain more

6   than "a formulaic recitation of the elements of a cause of action;" it must contain factual

7   allegations sufficient "to raise a right to relief above the speculative level."  <u>Id.</u>  However,

8   "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair

9   notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Erickson v. Pardus</u>, 551

10   U.S. 89, 93 (2007) (quoting <u>Bell Atlantic Corp.</u>, 550 U.S. at 555) (citations and internal

11   quotations marks omitted).  In reviewing a complaint under this standard, the court must accept

12   as true the allegations of the complaint in question,  <u>id.</u>, and construe the pleading in the light

13   most favorable to the plaintiff.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

14   II.  <u>Legal Standard for Eighth Amendment Claim</u>

15           Because plaintiff alleges inadequate medical care, the undersigned sets forth

16   herein the legal standard for Eighth Amendment claims alleging inadequate medical care.

17           Generally, deliberate indifference to a serious medical need presents a cognizable

18   claim for a violation of the Eighth Amendment's prohibition against cruel and unusual

19   punishment.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  According to <u>Farmer v. Brennan</u>, 511

20   U.S. 825, 847 (1994), "deliberate indifference" to a serious medical need exists "if [the prison

21   official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that

22   risk by failing to take reasonable measures to abate it."  The deliberate indifference standard "is

23   less stringent in cases involving a prisoner's medical needs than in other cases involving harm to

24   incarcerated individuals because 'the State's responsibility to provide inmates with medical care

25   ordinarily does not conflict with competing administrative concerns.'"  <u>McGuckin v. Smith</u>, 974

26   F.2d 1050, 1060 (9th Cir. 1992) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992)), <u>overruled</u>

1    on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

2    Specifically, a determination of "deliberate indifference" involves two elements:  (1) the

3    seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to

4    those needs.  McGuckin, 974 F.2d at 1059.

5           First, a "serious" medical need exists if the failure to treat a prisoner's condition

6    could result in further significant injury or the "unnecessary and wanton infliction of pain."  Id.

7    (citing Estelle, 429 U.S. at 104).  Examples of instances where a prisoner has a "serious" need for

8    medical attention include the existence of an injury that a reasonable doctor or patient would find

9    important and worthy of comment or treatment; the presence of a medical condition that

10   significantly affects an individual's daily activities; or the existence of chronic and substantial

11   pain.  McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41

12   (9th Cir. 1990)).

13          Second, the nature of a defendant's responses must be such that the defendant

14   purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for

15   "deliberate indifference" to be established.  McGuckin, 974 F.2d at 1060.  Deliberate

16   indifference may occur when prison officials deny, delay, or intentionally interfere with medical

17   treatment, or may be shown by the way in which prison physicians provide medical care."

18   Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988).  In order for deliberate

19   indifference to be established, there must first be a purposeful act or failure to act on the part of

20   the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060.  "A defendant must

21   purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for

22   deliberate indifference to be established."  Id.  Second, there must be a resulting harm from the

23   defendant's activities.  Id.  The needless suffering of pain may be sufficient to demonstrate

24   further harm.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

25          Mere differences of opinion concerning the appropriate treatment cannot be the

26   basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996);

                                                    4

Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  However, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  Id.

III.  Screening of Complaint

The undersigned herein screens the complaint filed February 20, 2012.  The complaint names 23 defendants: 1) Director of the California Department of Corrections and Rehabilitation ("CDCR") Tate; 2) J. Clark Kelso; 3)  High Desert State Prison ("HDSP") Warden Gower; 4) CDCR Assistant for Prison Health Care Yip: 5) CDCR Chief of Health Care Appeals Walker; 6) CDCR Acting Chief of Health Care Appeals Warren; 7) CDCR Chief of Health Care Appeals Zamora; 8) CDCR Health Care Appeals employee Flemings; 9) HDSP Chief Medical Officer ("CMO") Swingle; 10) HDSP Associate Warden Dewey; 11) HDSP Correctional Sergeant Glenn; 12) HDSP Dr. Lee; 13) HDSP Dr. Pomozal; 14) HDSP Physician's Assistant Medina; 15) HDSP Nurse French; 16) HDSP Nurse Friedenpelt; 17) HDSP Nurse Burnett; 18) HDSP Nurse Pearsall; 19) HDSP Licensed Vocational Nurse ("LVN") Marvin:  20) HDSP LVN Garcia; 21) HDSP LVN Irving; 22) HDSP Appeals Coordinator Frazier; and 23) HDSP Appeals Coordinator Garbutt.

Plaintiff alleges that he received inadequate medical care for hepatitis C, cancer, scoliosis and osteoporosis, an infection on his head and mental illness.

*Claims Involving Pain Medication*

Plaintiff alleges that defendant Lee refused to prescribe adequate pain medication. (Dkt. No. 20 at 27.)  Plaintiff alleges that on October 18, 2011, defendant Lee granted plaintiff's request for Tramadol.  (Id.)  Plaintiff alleges that on October 21, 2011, defendant Lee discontinued the Tramadol because plaintiff requested an increased dose.  (Id.)  Plaintiff alleges that on November 21, 2011, defendant Lee "denies the same medication to raise the dosage."

1   (Id.)  In support of this claim, plaintiff cites exhibits K and N, filed in support of the complaint

2   on February 23, 2012.  (Dkt. No. 22.)

3            Exhibit K includes a memorandum signed by defendant Lee on February 10,

4   2011, denying plaintiff's First Level Appeal.  (Dkt. No. 22-1 at 14-15.)  In this grievance,

5   plaintiff alleged that for the past two months, he had been telling Dr. Hoffman that the pain

6   medication was not helping.  (Id. at 14.)  Plaintiff sated that Dr. Hoffman refused to raise the

7   morphine dose, but added Tylenol # 3.  (Id.)  Plaintiff stated that he was not getting enough

8   morphine and requested either that the morphine dose be increased or that he be placed on some

9   pain medication other than morphine.  (Id.)  In denying plaintiff's appeal, defendant Lee stated

10   that a primary care provider had evaluated plaintiff and determined that his request was not

11   medically necessary.  (Id.)  This grievance does not mention Tramadol.

12            Exhibit N includes a memorandum signed by defendant Lee on October 18, 2011,

13   denying plaintiff's First Level Appeal.  (Id. at 41-42.)  In this grievance, plaintiff requested

14   several medications including Tramadol.  (Id. at 41.)  Defendant Lee granted this grievance,

15   stating that on September 14, 2011, the triage nurse told plaintiff that defendant Pomazal had

16   discontinued several medications, including Tramadol.  (Id.)  Defendant Lee responded that all of

17   the medications, including Tramadol, were renewed.  (Id.)

18            Exhibit K is not directly relevant to plaintiff's claim that defendant Lee denied

19   plaintiff's requests for Tramadol in October and November 2011.  Exhibit N supports plaintiff's

20   claim that defendant Lee granted plaintiff's request for Tramadol on October 18, 2011.

21            Plaintiff's claims that defendant Lee discontinued the Tramadol on October 21,

22   2011, but then refused to raise plaintiff's dose of Tramadol on November 21, 2011 are confusing.

23   It appears that at some time between October 21, 2011, and November 21, 2011, plaintiff again

24   began receiving Tramadol.  It is difficult to evaluate plaintiff's claims against defendant Lee

25   without knowing when Tramadol was re-prescribed for plaintiff after October 21, 2011.  It is also

26   not clear what dose of Tramadol plaintiff sought on November 21, 2011.  For these reasons, the

1   undersigned cannot determine whether plaintiff has stated a colorable Eighth Amendment claim

2   against defendant Lee.  Accordingly, these claims are dismissed with leave to amend.  If plaintiff

3   files an amended complaint, he must clarify when he was re-prescribed Tramadol after defendant

4   Lee allegedly discontinued this prescription on October 21, 2011.  Plaintiff shall also address the

5   dose of Tramadol he received after October 21, 2011 and the dose defendant Lee allegedly

6   refused to prescribe on November 21, 2011.

7          Plaintiff alleges that in November 2008, defendant Medina tried to get plaintiff to

8   sign a pain contract.  (Dkt. No. 20 at 27.)  Plaintiff alleges that a pain contract denies a prisoner

9   the right to go "man down" during a medical emergency.  (Id.)  Plaintiff does not claim that he

10  signed the pain contract.  Plaintiff does not allege that he suffered any injury as a result of not

11  signing the pain contract.  The fact that defendant Medina allegedly asked plaintiff to sign a pain

12  contract does not alone state a colorable Eighth Amendment claim.  Accordingly, this claim is

13  dismissed with leave to amend.

14         Plaintiff alleges that on January 8, 2009, he woke up feeling sharp pains in his

15  chest area and left side.  (Id. at 29.)  Defendant Burnett allegedly came to examine plaintiff.  (Id.)

16  Because plaintiff was in great pain, plaintiff alleges that defendant Burnett could not touch him

17  on his chest or left side.  (Id.)  Plaintiff alleges that defendant Burnett called a doctor, but there

18  were no doctors in the prison on third watch.  (Id.)  Plaintiff alleges that "all these doctors kept

19  refusing to give plaintiff proper and adequate pain medications" even though "they knew plaintiff

20  has cancer in right lung."  (Id.)  Plaintiff goes on to allege that a few days later, defendant Medina

21  told plaintiff that he believed that plaintiff had lung cancer, but refused to prescribe any pain

22  medication.  (Id. at 31.)  In support of this claim, plaintiff cites his Exhibit O.

23         Plaintiff's exhibit O is a copy of the Director's Level Decision dated January 27,

24  2010, addressing plaintiff's grievance regarding the January 8, 2009 incident.  (Dkt. 22-1 at 53.)

25  This grievance states that on January 8, 2009, defendant Medina instructed the triage nurse to tell

26  plaintiff to take nitroglycerin then rest.  (Id.)

7

1    Plaintiff's claim that on January 8, 2009, defendant Burnett called a doctor to

2  examine plaintiff does not state a colorable Eighth Amendment claim.  Plaintiff does not allege

3  that defendant Burnett refused to treat plaintiff or otherwise provided improper care.

4  Accordingly, these claims against defendant Burnett are dismissed with leave to amend.

5    Plaintiff's claim that a few days later defendant Medina told plaintiff that he

6  "believed" he had lung cancer, but refused to provide pain medication is vague and conclusory.

7  Plaintiff does not allege when this examination took place or describe the circumstances of this

8  examination in any greater detail.  Because this claim is vague and conclusory, it is dismissed

9  with leave to amend.  If plaintiff is challenging defendant Medina's order that plaintiff take

10  nitroglycerin then rest, he must clarify this in an amended complaint.  Plaintiff must also describe

11  how this order that he take nitroglycerin constituted inadequate medical care.

12    Plaintiff alleges that he sent letters to the office of defendant Kelso, the receiver

13  appointed to manage the CDCR medical care system.  (Dkt. 20 at 21-22.)  Plaintiff alleges that

14  his letters were sent to the Controlled Correspondence Unit ("CCU") rather than defendant

15  Kelso.  (Id.)  The CCU is apparently part of the receiver's office.  Plaintiff alleges that his letters

16  concerned inadequate pain medication.  (Id.)  Plaintiff alleges that the CCU did not adequately

17  address his concerns.  In support of this claim, plaintiff refers to his exhibits AA through GG.

18    Exhibit AA is a letter sent to plaintiff from N. Warren, the Staff Services Manager

19  I of the CCU dated February 13, 2009.  (Dkt. No. 22-2 at 30-32.)  This letter states that the Prison

20  Health Care Receivership received four letters from plaintiff dated November 19, 2008,

21  December 3 and 17, 2008, and January 25, 2009, concerning medical care at HDSP.  (Id. at 30.)

22  The letter identifies plaintiff's medical concerns which included inadequate pain medication.

23  (Id.)  The letter goes on to state that CCU contacted HDSP medical staff who reviewed plaintiff's

24  Unit Health Record and medical appeals history.  (Id. at 31.)  The letter describes the medical

25  care plaintiff received, as reflected in these records.  (Id.)  The letter concludes that "[b]ased on

26  the information received and reviewed, it appears HDSP medical staff is providing for your

8

1   health and treatment concerns, including referrals to specialists when medically necessary." (Id.)

2   Plaintiff argues that by accepting the representations of prison officials regarding the health care

3   they provided to plaintiff, defendant Kelso violated his Eighth Amendment rights.

4          The undersigned has not found that plaintiff stated any colorable claims for

5   inadequate pain medication against defendants at HDSP during 2008 and 2009, i.e., the dates the

6   letter from the CCU addresses.  For this reason, the undersigned cannot find that defendant

7   Kelso's office failed to adequately investigate plaintiff's claims of inadequate pain medication

8   during that time.  Exhibits BB through GG do not include any further communications to

9   plaintiff from defendant Kelso's office.  For these reasons, the claims against defendant Kelso are

10  dismissed with leave to amend.

11         Plaintiff alleges that exhibit DD includes letters to defendant Warden Gower from

12  plaintiff containing complaints regarding alleged inadequate medical care.  (Dkt. No. 20 at 24-

13  25.)  Exhibit DD includes a letter from plaintiff to the Director of Internal Affairs complaining

14  about race-based lock downs and the delay in processing two Health Care Appeals alleging

15  inadequate medical care.  (Dkt. No. 22-2 at 47.)  Also included in Exhibit DD is a memorandum

16  to plaintiff from former HDSP Warden McDonald stating that plaintiff's letter to the Officer of

17  Internal Affairs was forwarded to his office.  (Id. at 49.)  Former Warden McDonald went on to

18  encourage plaintiff to use the inmate appeal system.  (Id.)

19         The documents attached to Exhibit DD do not demonstrate that defendant Gower

20  had knowledge of any alleged inadequate medical care received by plaintiff.  For this reason, the

21  claims against this defendant are dismissed with leave to amend.

22              *Hepatitis C*

23         Plaintiff alleges that defendants Friedenpelt and French discontinued plaintiff's

24  hepatitis C treatment because plaintiff refused to go to his last cancer treatment.  (Dkt. 20 at 28-

25  29.)  Plaintiff alleges that these defendants, who are nurses, were not authorized to stop the

26  hepatitis C treatment.  (Id. at 29.)  Plaintiff alleges that only doctors are authorized to discontinue

1   hepatitis C treatment.  (Id.)  In support of this claim, plaintiff cites his Exhibit B.

2              Exhibit B includes copies of plaintiff's administrative appeals challenging the

3   discontinuation of his hepatitis C treatment by defendants Friedenpelt and French.  In these

4   grievances, plaintiff stated that he wanted to find out why the hepatitis treatment was stopped.

5   (Dkt. No. 22 at 17.)  In the first and second level grievances, plaintiff stated that if the hepatitis

6   treatment was stopped because of his cancer treatment, he wanted to inform prison officials that

7   he was no longer taking the cancer treatments.  (Id.)

8              The First Level Response, dated September 21, 2009, stated that until plaintiff

9   was cleared by his oncologist, he could not be considered for further hepatitis C treatment.  (Id. at

10  17.)  The second level response, dated October 2, 2009, stated that plaintiff could not be

11  reconsidered for hepatitis C treatment until medically cleared by an oncologist.  (Id. at 21.)

12             The January 20, 2010 Director's Level Decision, signed by defendant Walker,

13  stated that in plaintiff's Director's Level grievance filed October 18, 2009, plaintiff stated that he

14  was seen by the oncologist on October 13, 2009, and cleared for the hepatitis C treatment.  (Id. at

15  16.)  The Director's Level decision signed by defendant Walker denied plaintiff's request to

16  restart the hepatitis C treatment.  (Id.)  The Director's Level decision stated that the notes from

17  plaintiff's October 12, 2009 oncology appointment recommended that plaintiff keep his

18  vaccinations updated, receive a CT of his chest every three months and a follow-up as needed.

19  (Id.)  The Director's Level Report also stated that on December 31, 2009, plaintiff's primary care

20  provider noted that plaintiff's hepatitis C virus was undetectable as of October 28, 2008.  (Id.)

21             The records from the grievances described above indicate that plaintiff's request

22  to re-start his hepatitis C treatment at the conclusion of his cancer treatment was denied.  These

23  records also indicate that the decision to deny plaintiff's request to restart the hepatitis C

24  treatment was not made by defendants Friedenpelt and French.  Because plaintiff has not linked

25  defendants Friendenpelt and French to these facts, this claim is dismissed with leave to amend.

26  ////

10

1          *Head Injury*

2                Plaintiff alleges that on February 14, 2011, defendant Pearsall refused to examine

3    or call a doctor to treat the staph infection that was on the bump on plaintiff's head.  (Dkt. No. 20

4    at 32.)  Plaintiff alleges that this condition was "very, very painful."  (Id.)  Plaintiff alleges that

5    defendant Pomozal refused to drain the bump on his head, which increased the likelihood of the

6    staph infection returning, as it had done once before.  (Id.)  These allegations against defendants

7    Pearsall and Pomozal state potentially colorable claims for relief.

8          *Egg Crate Mattress*

9                Plaintiff alleges that Dr. Hoffman refused to renew plaintiff's chrono for an egg

10   crate mattress.  (Id.)  Plaintiff alleges that Dr. Hoffman will be "added as a defendant by way of a

11   supplement to this case."  (Id.)

12               It is not clear why plaintiff did not name Dr. Hoffman as a defendant.  Because Dr.

13   Hoffman is not named as a defendant in the complaint, the undersigned will not address this claim

14   any further.  If plaintiff files an amended complaint, he must clearly identify all of the defendants

15   and the factual bases for naming each one as a defendant.

16         *Psychiatric Medication*

17               Plaintiff generally alleges that defendants Marvin, Garcia and Irving refused to

18   give plaintiff his psychiatric medication.  (Id.)  In support of this claim, plaintiff cites his exhibits

19   F, P and S.

20               Plaintiff's exhibit F is an inmate grievance complaining that Nurses Whittier and

21   Bryant did not bring plaintiff his psychiatric medications.  (Dkt. No. 22 at 49.)   Exhibit P is an

22   inmate grievance signed by plaintiff on December 11, 2011, alleging that defendant Garcia did not

23   give plaintiff all of his night time medications on December 8, 2011.  (Dkt. No. 22-1 at 66.)

24   Exhibit S includes plaintiff's grievances alleging that on July 11, 2011, and the week before,

25   defendant Marvin brought plaintiff part of his psychiatric medication.  (Dkt. No. 22-2.)

26               Exhibits F, P and S contain no information regarding when defendant Irving

1   allegedly failed to bring plaintiff his psychiatric medication.  While plaintiff's exhibits may

2   contain information regarding the dates when defendants Marvin and Garcia allegedly failed to

3   bring plaintiff his psychiatric medications, the complaint does not.  Plaintiff may not rely on his

4   exhibits to state his claims for him.  For this reason, these claims against defendants Marvin,

5   Garcia and Irving are dismissed with leave to amend.  If plaintiff files an amended complaint, he

6   must, to the best of his ability, allege when these defendants failed to bring him his psychiatric

7   medications.

8           Plaintiff also alleges that a doctor improperly discontinued plaintiff's prescription

9   for Remerol.  (Dkt. No. 20 at 33.)  Plaintiff does not identify this doctor.  Because no defendant is

10  linked to this claim, the undersigned cannot order service of this claim.

11          *Administrative Grievances*

12          Plaintiff alleges that defendants Garbutt and Frazier improperly denied, rejected,

13  screened out or cancelled three sets of grievances.  (Id. at 34.)    Plaintiff alleges that "all other

14  grievances" were denied, rejected, screened out or cancelled even if they were partially granted by

15  defendants Yip, Walker, Warren, Zamora or Fleming.  (Id.)

16          To the extent plaintiff is claiming that the handling of his grievances violated his

17  right to due process, he has not stated a colorable claim for relief.  See Ramirez v. Galaza, 334

18  F.3d 850, 860 (9th Cir. 2003) (holding that prisoner's claimed loss of a liberty interest in the

19  processing of his appeals does not violate due process because prisoners lack a separate

20  constitutional entitlement to a specific prison grievance system).  Plaintiff may not impose

21  liability on a defendant simply because he or she played a role in processing plaintiff's inmate

22  appeals.  For these reasons, plaintiff's claims against defendants Garbutt and Frazier are dismissed

23  with leave to amend.

24          *Crushed Medications*

25          Plaintiff alleges that medical personnel have improperly crushed his medication.

26  (Dkt. No. 20 at 34-35.)  No defendants are linked to this claim.  For this reason, this claim is

1   dismissed with leave to amend.

2       *Defendants Tate, Yip, Walker, Warren, Zamora, Flemings, Swingle, Dewy and*

3   *Glenn*

4       The complaint contains no specific claims that defendants Tate, Yip, Walker,

5   Warren, Zamora, Flemings, Swingle, Dewey and Glenn violated plaintiff's constitutional rights.

6       The Civil Rights Act under which this action was filed provides as follows:

7       Every person who, under color of [state law] . . . subjects, or causes
        to be subjected, any citizen of the United States . . . to the
8       deprivation of any rights, privileges, or immunities secured by the
        Constitution . . . shall be liable to the party injured in an action at
9       law, suit in equity, or other proper proceeding for redress.

10  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

11  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

12  Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend

13  § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976)

14  (no affirmative link between the incidents of police misconduct and the adoption of any plan or

15  policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects'

16  another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

17  affirmative act, participates in another's affirmative acts or omits to perform an act which he is

18  legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,

19  588 F.2d 740, 743 (9th Cir. 1978).

20      Moreover, supervisory personnel are generally not liable under § 1983 for the

21  actions of their employees under a theory of respondeat superior and, therefore, when a named

22  defendant holds a supervisorial position, the causal link between him and the claimed

23  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th

24  Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld,

25  589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where there is no

26  evidence of personal participation).  Vague and conclusory allegations concerning the

1  involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of

2  Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of

3  personal participation is insufficient).

4  Because plaintiff has failed to link defendants Tate, Yip, Walker, Warren, Zamora,

5  Flemings, Swingle, Dewey and Glenn to any alleged deprivations, the claims against these

6  defendants are dismissed with leave to amend.

7  IV.  Screening of "Supplement"

8  Attached directly to plaintiff's complaint is a document called "supplement."  In

9  this document, plaintiff states that he also intends to name as defendants 1) HDSP Head of Mental

10  Health Services Dr. Cummings; 2) Psych Case Manager Stovall; and 3) physician's assistant

11  Royston.

12  Plaintiff alleges that defendant Royston prescribed a pain medication called

13  Salsdate for plaintiff.  (Dkt. 20-1 at 1.)  Plaintiff alleges that aspirin is an ingredient of Salsdate.

14  (Id.)  Plaintiff alleges that his medical records state that he cannot take aspirin products because

15  they cause him stomach pain.  (Id.)  Plaintiff alleges that defendant Royston told him that he went

16  through plaintiff's medical records and told plaintiff that Salsdate should not have been prescribed

17  for him.  (Id.)

18  The undersigned finds that plaintiff has stated a potentially colorable claim for

19  relief against defendant Royston.

20  The supplement contains no specific allegations against defendants Cummings and

21  Stovall.  Because plaintiff has failed to link these defendants to any alleged deprivations, the

22  claims against them are dismissed with leave to amend.

23  V.  Instructions for Filing Amended Complaint

24  Plaintiff may proceed forthwith to serve defendants Pearsall, Pomozal and Royston

25  and pursue his claims against only these defendants, or he may delay serving any defendant and

26  attempt to state a cognizable claim against the defendants against whom he has not stated

14

1   cognizable claims for relief.

2          If plaintiff elects to attempt to amend his complaint to state a cognizable claim

3   against the remaining defendants, he has thirty days in which to file such an amended complaint.

4   He is not obligated to amend his complaint.

5          If plaintiff elects to proceed forthwith against defendants Pearsall, Pomozal and

6   Royston, against whom he has stated potentially cognizable claims for relief, then within thirty

7   days he must return materials for service of process enclosed herewith.  In this event, the court

8   will construe plaintiff's election as consent to dismissal of all claims against the remaining

9   defendants without prejudice.

10         Plaintiff is advised that in an amended complaint he must clearly identify each

11  defendant and the action that defendant took that violated his constitutional rights.  The court is

12  not required to review exhibits to determine what plaintiff's charging allegations are as to each

13  named defendant.  The charging allegations must be set forth in the amended complaint so

14  defendants have fair notice of the claims plaintiff is presenting.

15         Any amended complaint must show the federal court has jurisdiction, the action is

16  brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It

17  must contain a request for particular relief.  Plaintiff must identify as a defendant only persons

18  who personally participated in a substantial way in depriving plaintiff of a federal constitutional

19  right.  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the

20  deprivation of a constitutional right if he does an act, participates in another's act or omits to

21  perform an act he is legally required to do that causes the alleged deprivation).  If plaintiff

22  contends he was the victim of a conspiracy, he must identify the participants and allege their

23  agreement to deprive him of a specific federal constitutional right.

24         In an amended complaint, the allegations must be set forth in numbered

25  paragraphs. Fed. R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a

26  single defendant. Fed. R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate

1    transactions or occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P.

2    10(b).

3            The federal rules contemplate brevity.  See Galbraith v. County of Santa Clara, 307

4    F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any

5    heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P.

6    84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading).  Plaintiff's claims must be

7    set forth in short and plain terms, simply, concisely and directly.  See Swierkiewicz v. Sorema

8    N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system,

9    which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8. Plaintiff must

10   not include any preambles, introductions, argument, speeches, explanations, stories, griping,

11   vouching, evidence, attempts to negate possible defenses, summaries, and the like.  McHenry v.

12   Renne, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming dismissal of § 1983 complaint for

13   violation of Rule 8 after warning); see Crawford-El v. Britton, 523 U.S. 574, 597 (1998)

14   (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in

15   prisoner cases).  The court (and defendant) should be able to read and understand plaintiff's

16   pleading within minutes.  McHenry, 84 F.3d at 1179-80.  A long, rambling pleading including

17   many defendants with unexplained, tenuous or implausible connection to the alleged

18   constitutional injury, or joining a series of unrelated claims against many defendants, very likely

19   will result in delaying the review required by 28 U.S.C. § 1915 and an order dismissing plaintiff's

20   action pursuant to Fed. R. Civ. P. 41 for violation of these instructions.

21           A district court must construe a pro se pleading "liberally" to determine if it states

22   a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

23   opportunity to cure them.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000).  While

24   detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of

25   action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct.

26   1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff

1  must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

2  on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged. The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are merely consistent with a
> defendant's liability, it stops short of the line between possibility
> and plausibility of entitlement to relief.

8  Id. (citations and quotation marks omitted).  Although legal conclusions can provide the

9  framework of a complaint, they must be supported by factual allegations, and are not entitled to

10  the assumption of truth.  Id. at 1950.

11  An amended complaint must be complete in itself without reference to any prior

12  pleading.  Local Rule 15-220; see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff

13  files an amended complaint, the original pleading is superseded.

14  By signing an amended complaint, plaintiff certifies he has made reasonable

15  inquiry and has evidentiary support for his allegations, and for violation of this rule the court may

16  impose sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

17  A prisoner may bring no § 1983 action until he has exhausted such administrative

18  remedies as are available to him.  42 U.S.C. § 1997e(a).  The requirement is mandatory.  Booth v.

19  Churner, 532 U.S. 731, 741 (2001).  California prisoners or parolees may appeal "any

20  departmental decision, action, condition, or policy which they can demonstrate as having an

21  adverse effect upon their welfare."  Cal. Code Regs. tit. 15, §§ 3084.1, et seq.  An appeal must be

22  presented on a CDC form 602 that asks simply that the prisoner "describe the problem" and

23  "action requested."  Therefore, this court ordinarily will review only claims against prison

24  officials within the scope of the problem reported in a CDC form 602 or an interview or claims

25  that were or should have been uncovered in the review promised by the department.  Plaintiff is

26  further admonished that by signing an amended complaint he certifies his claims are warranted by

1   existing law, including the law that he exhaust administrative remedies, and that for violation of

2   this rule plaintiff risks dismissal of his entire action.

3          Finally, plaintiff is reminded that if he files an amended complaint, he may not rely

4   on exhibits to state his claims for him.  The amended complaint must contain all of plaintiff's

5   allegations against defendants.  Finally, Federal Rule of Civil Procedure 8(a) requires complaints

6   to contain *short* and *plain* statements of claims for relief.  For this reason, if plaintiff files an

7   amended complaint *it may be no longer than 20 pages*.

8   VI.  Remaining Matters

9          On February 2, 2012, plaintiff filed a motion for an extension of time to file the

10  documents requested by the court.  (Dkt. No. 16.)  At the time plaintiff filed this motion, the court

11  had not requested that he file any documents.  Accordingly, this motion is denied as unnecessary.

12         On February 17, 2012, plaintiff filed a motion for the appointment of counsel.

13  (Dkt. No. 17.)  The United States Supreme Court has ruled that district courts lack authority to

14  require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist.

15  Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request the

16  voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d

17  1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In

18  the present case, the court does not find the required exceptional circumstances.  Plaintiff's

19  request for the appointment of counsel will therefore be denied.

20         On February 2, 2012, plaintiff filed a motion to incorporate all cases.  (Dkt. No.

21  18.)  In this motion, plaintiff lists cases apparently filed in the United States District Court for the

22  Northern District of California.  The court is not authorized to incorporate or relate cases from

23  other districts.  Accordingly, this motion is denied.

24         On February 2, 2012, plaintiff filed a motion requesting that the court issue a

25  summons for service of all defendants.  (Dkt. No. 19.)  Because the undersigned has not found

26  service for all defendants to be appropriate, plaintiff's request that the court issue a summons for

1    all defendants is denied.

2         On February 14, 2012, plaintiff filed a motion requesting that this action be

3    transferred to the United States District Court for the Northern District.  (Dkt. No. 21.)   For the

4    reasons stated in the January 31, 2012 order by Judge Gonzalez Rogers transferring this action to

5    this court, jurisdiction is appropriate in the United States District Court of the Eastern District of

6    California.  Accordingly, plaintiff's motion requesting that this action be transferred to the

7    Northern District is denied.

8         On February 23, 2012, plaintiff filed a motion for law library access.  (Dkt. No.

9    24.)  This motion is denied because no court deadlines were pending at the time plaintiff filed this

10   motion.

11        On March 19, 2012, plaintiff filed a motion requesting that the court issue an order

12   addressing his complaint.  (Dkt. No. 29.)  Because the court has addressed plaintiff's complaint in

13   the instant order, this motion is denied as unnecessary.

14        On March 19, 2012, plaintiff filed a document titled "Supplement," which the

15   court construes as a motion for leave to file an amended complaint.  (Dkt. No. 32.)  Plaintiff

16   requests permission to file a "supplement" adding new defendants.

17        Plaintiff is advised that under Local Rule 220, plaintiff may not amend the

18   complaint by adding piecemeal information or exhibits after the complaint has been filed.  In

19   other words, an amended complaint must be complete in itself without reference to any prior

20   pleading. As a general rule, an amended complaint supersedes the original complaint.  See Loux

21   v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original

22   complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an

23   original complaint, each claim and the involvement of each defendant must be sufficiently

24   alleged.

25        Plaintiff's March 19, 2012 "supplement" does not contain plaintiff's claims against

26   all defendants.  As discussed above, this type of piecemeal amendment is not permitted.

1   Accordingly, plaintiff's motion for leave to amend is denied.  If plaintiff files an amended

2   complaint, he may include his claims against the defendants identified in his March 19, 2012

3   "supplement."

4                   Accordingly, IT IS HEREBY ORDERED that:

5                   1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

6                   2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.

7   Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

8   § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

9   Director of the California Department of Corrections and Rehabilitation filed concurrently

10  herewith.

11                  3.  Claims against all defendants except for defendants Pearsall, Pomozal and

12  Royston are dismissed with leave to amend.  Within thirty days of service of this order, plaintiff

13  may amend his complaint to attempt to state cognizable claims against these defendants.  Plaintiff

14  is not obliged to amend his complaint.

15                  4.  The allegations in the pleading are sufficient to state a potentially cognizable

16  claim against defendants Pearsall, Pomozal and Royston.  See 28 U.S.C. § 1915A.  With this

17  order the Clerk of the Court shall provide to plaintiff a blank summons, a copy of the pleading

18  filed February 6, 2012, one USM-285 form and instructions for service of process on defendants

19  Pearsall, Pomozal and Royston.  Within thirty days of service of this order plaintiff may return the

20  attached Notice of Submission of Documents with the completed summons, the completed

21  USM-285 forms, and one copy of the February 6, 2012 complaint.  The court will transmit them

22  to the United States Marshal for service of process pursuant to Fed. R. Civ. P. 4.  Defendants

23  Pearsall, Pomozal and Royston will be required to respond to plaintiff's allegations within the

24  deadlines stated in Fed. R. Civ. P. 12(a)(1).  In this event, the court will construe plaintiff's

25  election to proceed forthwith as consent to an order dismissing his defective claims against all

26  other defendants but for defendants Pearsall, Pomozal and Royston without prejudice.

1    5.  Failure to comply with this order will result in a recommendation that this

2 action be dismissed.

3    6.  Plaintiff's motion for an extension of time (Dkt. No. 16) is denied.

4    7.  Plaintiff's motion for appointment of counsel (Dkt. No. 17) is denied.

5    8.  Plaintiff's motion to consolidate cases (Dkt. No. 18) is denied.

6    9.  Plaintiff's motion for a summons (Dkt. No. 19) is denied.

7    10.  Plaintiff's motion to have this action transferred (Dkt. No. 21) is denied.

8    11.  Plaintiff's motion for law library access (Dkt. No. 24) is denied.

9    12.  Plaintiff's motion for a ruling on his complaint (Dkt. No. 29) is denied.

10    13.  Plaintiff's motion to amend his complaint (Dkt. No. 32) is denied.

11 DATED:  March 30, 2012

12

13

         _____
14         KENDALL J. NEWMAN
         UNITED STATES MAGISTRATE JUDGE

15 an261.14

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8  SAMUEL ANDERSON,

9            Plaintiff,                  No. 2: 12-0261 MCE KJN P

10        vs.

11 J. CLARK KELSO,

12           Defendants.            NOTICE OF SUBMISSION OF DOCUMENTS

13 _____/

14          Plaintiff hereby submits the following documents in compliance with the court's

15 order filed _____:

16          _____        completed summons form
                         completed forms USM-285
17          _____        copies of the _____
            _____             Amended Complaint
18

19          _____   Plaintiff consents to the dismissal of all defendants
                    but for defendants Pearsall, Pomozal and Royston
20                  without prejudice.

21      OR

22          _____   Plaintiff opts to file an amended complaint and delay service of process.

23

   Dated:
24

25                                   _____
                                           Plaintiff
26