UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL ANDERSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>T. KIMURA-YIP, Associate Director, California Prison Health Care, et al.,<br><br>　　　　Defendants. | No. 2:12-cv-00261-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Samuel Anderson initiated this action pursuant to 42 U.S.C. § 1983 in 2011. After pretrial motions disposed of a number of claims against various parties, the matter proceeded to trial in March 2016 on Plaintiff's Eight Amendment claims of deliberate indifference to medical care against Defendant's Dr. Dorothy Swingle, the Chief Medical Officer at High Desert State Prison ("High Desert"); Dr. Bonnie Lee, a High Desert physician; and Jerry Stovall, a licensed clinical social worker at the prison. After a three-day trial, the jury returned a unanimous verdict in Plaintiff's favor as to Defendants Lee and Swingle and awarded Plaintiff $120,000 in damages.[1] Presently before the Court are Defendants' Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial (ECF No. 256), and Plaintiff's Motion for Attorneys' Fees

---
[1] Because the jury found in favor of Stovall on the claim against him, and Plaintiff does not challenge that verdict here, any further discussion of Plaintiff's claim against Stovall is omitted.

1  (ECF No. 258).[2]  For the following reasons, Defendants' Motion is DENIED, and
2  Plaintiff's Motion is GRANTED in part and DENIED in part.[3]

## BACKGROUND[4]

Plaintiff is a 67-year-old inmate housed at High Desert.  While at the prison, Plaintiff complained of chronic back and nerve pain.  He was diagnosed with scoliosis, degenerative joint disease (osteoarthritis), and leg pain, which may have arisen from neuropathy associated with diabetes.  Plaintiff was initially prescribed morphine for his back pain.

In March 2011, plaintiff's morphine dosage was gradually decreased, eventually discontinued, and he began receiving Tramadol instead.  In addition, a few months later, in June 2011, Plaintiff began receiving oxcarbazepine for his nerve pain.  Subsequently, in October 2011, Plaintiff's primary care physician referred Plaintiff to the prison's Pain Management Committee ("Committee").  Defendants Swingle and Lee were both Committee members.

In November 2011, the Committee further referred Plaintiff to a specialist for pain testing to assess his need for pain medication and whether he would benefit from physical therapy.  Eventually, on February 28, 2012, the Committee, including Defendants Swingle and Lee, noted that Plaintiff was still taking oxcarbazepine for nerve pain, and recommended that Plaintiff's Tramadol prescription not be renewed.  Instead, the Committee recommended offering Plaintiff Tylenol, physical therapy, and non-opiod medications.

---

[2] Plaintiff's additional subsequent pro se motions are DENIED because Plaintiff is represented by counsel.  ECF Nos. 271-274.

[3] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

[4] Unless a specific citation is included to the evidence introduced at trial, the following facts are taken, at times verbatim, from the undisputed facts in the Court's initial Pretrial Order.  ECF No. 194.

Plaintiff initiated this action pro se in December 2011, and on or around June 2012, he began receiving Tramadol again.[5] The Court thereafter appointed Chijioke Ikonte ("Ikonte") of the law firm Akudinobi & Ikonte from its pro bono panel to represent Plaintiff on August 23, 2012. ECF No. 79. Defendants eventually moved for summary judgment, which Plaintiff opposed. While Defendants' motion was subsequently granted in part, the claims against Defendants Lee, Swingle, and Stovall were permitted to go forward. ECF Nos. 178-179.

The matter proceeded to trial and the jury was tasked with determining whether Defendants were deliberately indifferent to Plaintiff's medical needs based on the discontinuance of, first, his morphine prescription, and, second, his Tramadol prescription. During the course of trial, Plaintiff's expert, Dr. Gerald Frank, testified that a stepwise approach to pain management was preferable and, in fact, was the approach adopted by the Pain Management Guidelines for the prison health care services. ECF No. 251, at 97:3-98:3, 102:6-18; Ex. 192, at 52. Under this method a patient's pain is first treated with low-potency medication and, if that is not effective, he is then moved to a more potent medication, the doses of which are titrated upward until the pain has been controlled. Id.[6]

When asked for his "opinion regarding the treatment [Plaintiff] received for pain management," namely the discontinuation of opioids, Dr. Frank opined that "this was so far from difference of opinion among physicians that it reached the point of callous disregard for someone's complaints." Id. at 103:15-23. Dr. Frank based his opinion on the observation that "[i]nstead of the stepwise approach . . . discussed before integrating all the approaches including medication management, what happened to [Plaintiff] repeatedly was medications which he reported as effective were discontinued with no explanation that [he] could find in the medical record." Id. at 104:6-10. In addition,

---

[5] Defendant Swingle approved the use of Tramadol after this lawsuit was initiated and Plaintiff had sought preliminary injunctive relief. See ECF No. 58; ECF No. 252, at 328:12-14.

[6] Defendant Lee confirmed in her testimony that this approach is appropriate as well. ECF No. 252, at 258:14-260:9.

3

1  Dr. Frank testified that stopping the Tramadol "made no sense." Id. at 105:1-2.
2  According to Dr. Frank, "[he] couldn't understand why you would stop a medication that
3  wasn't causing unacceptable side effects and seem[ed] to be effective," especially when
4  Plaintiff was not receiving a dose close to what would be considered the upper limit. Id.
5  at 105:2-7. Moreover, Dr. Frank opined, "stopping opioid-based therapy cold turkey"
6  amounted to "cruel and unusual punishment" and taking such action "guarantee[d] that
7  person [would] experience opioid withdrawal and will kick in a very horrible way." Id. at
8  124:1-5.

Finally, Dr. Frank testified that "untreated chronic pain ruins a person's life as well as the lives of all the persons around that person." Id. at 126:1-3. Plaintiff similarly testified that his level of pain was "so excruciating it would make [him] cry and keep [him] from going to sleep." ECF No. 252, at 185:11-12. According to Plaintiff, he was in pain around the clock, and, aside from preventing sleep, the pain kept him from socializing or going out into the yard. Id. at 185:16-21. More specifically, Plaintiff testified that:

> Typical day without pain, it's a miracle. It's a pleasant feeling. I'm able to move around, laugh and joke, play pinochle, watch TV. But when I have the pain, I'm usually irritated . . . When the pain hits, it's like being in surgery without novocaine, without anesthesia. It's unbearable. It really is.

Id. at 190:17-25.

The jury unanimously found for Plaintiff that Defendants Lee and Swingle were indifferent to his medical needs, that they unreasonably "decide[d] to discontinue [Plaintiff's] prescription for tramadol," and that he should be awarded $60,000 against each Defendant.[7] ECF No. 245. Defendants now move for judgment as a matter of law or for a new trial on the basis that: (1) Defendants should not be held liable for discontinuing the Tramadol prescription; (2) the verdict was against the weight of the evidence; (3) the verdict was excessive; (4) the Court improperly permitted Plaintiff to offer evidence that he was eventually prescribed methadone; and (5) the Court erred in

---

[7] The jury determined, to the contrary, that Defendants were not liable for discontinuing Plaintiff on morphine. Accordingly, the facts pertinent to that theory of liability are not discussed further here.

refusing to instruct the jury concerning negligence.

Plaintiff opposes Defendants' motion and seeks to recover attorneys' fees and costs of approximately $151,000.  According to Ikonte, he propounded written discovery on Defendants, subpoenaed Plaintiff's records from California Department of Corrections and Rehabilitation, deposed Defendant Lee and another defendant no longer party to this action, and defended Plaintiff's deposition.  Ikonte Decl., ECF No. 259, ¶ 5.  He also successfully opposed, at least in part, Defendants' Motion for Summary Judgment.  Id. ¶ 6.  In addition, Ikonte worked with co-counsel Emmanuel Akudinobi and Emenike Iroegbu on a variety of tasks, including reviewing medical and prison records, legal research, preparing for and conducting depositions, opposing the motion for summary judgment, and preparing for trial.  Id. ¶¶ 7-8.  Ikonte also spent substantial time conferring with Plaintiff's expert, Dr. Gerald Frank, and meeting with Plaintiff himself.  Id. ¶¶ 9-10.  In all, Ikonte avers that counsel spent 730 hours working on this case.  Id. ¶ 20.  Counsel also incurred a variety of travel and other miscellaneous expenses prosecuting the action.  Id. ¶¶ 11-18.  Finally, Ikonte indicates that the cost of retaining Dr. Frank was $11,224.  Id. ¶ 19.  Defendants oppose this motion on a variety of bases.

The Court has considered the arguments and filings of counsel and the record in its entirety.  For the following reasons, Defendants' motion is DENIED, and Plaintiff's Motion is GRANTED in part and DENIED in part.

## ANALYSIS

### A.  Motion For Judgment As A Matter Of Law Or For A Law New Trial

Entering judgment as a matter of law ("JMOL") is proper only when "the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury."  Lakeside-Scott v. Multnomah County, 556 F.3d 797, 802 (9th Cir. 2009) (internal quotation marks and citation omitted).  To justify relief through a JMOL, there must be a "complete absence of probative facts to support the conclusion reached so

that no reasonable juror could have found for the nonmoving party." Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 761 (8th Cir. 2003) (internal quotation marks and citations omitted). While the Court should review the evidence comprising the record, it should "not make credibility determinations or weigh the evidence," and further should construe all evidence in the light most favoring the nonmoving party, here Plaintiff. Reeves v. Sanderson Plumbing Co., 530 U.S. 133, 150-51 (2000).

In order to bring the present post-trial motion under Rule 50(b), Defendants must first have moved for JMOL prior to submission of the case to the jury. Fed. R. Civ. P. 50(a). Here, the requisite motion was made by Defendants, prior to the time evidence closed, and was subsequently denied. That allowed Defendants to renew their motion for JMOL after entry of judgment under Rule 50(b).

As an alternative to their request for JMOL, Defendants advocate for a new trial on grounds that the verdict ultimately reached by the jury was against the weight of the evidence. A district court has discretion to grant a new trial when the jury's verdict is contrary to the "clear weight of the evidence," is based on false evidence, or would result in a miscarriage of justice. Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001) (quotation marks and citations omitted). The standard for assessing a motion for new trial differs from that applicable to a motion for JMOL under Rule 50(b) inasmuch as even if the verdict is supported by enough evidence to survive a 50(b) challenge, the Court in ruling on a new trial request has the obligation to set aside the verdict under Rule 59(a) if the verdict runs afoul of the "clear weight" of the evidence that has been presented. See Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).

A verdict is against the clear weight of the evidence when, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed" by the jury. Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371-1372 (9th Cir. 1987) (citations omitted). In ruling on a motion for new trial, "the judge can weigh the evidence and assess the credibility of witnesses, and

need not view the evidence from the perspective most favorable to the prevailing party." Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 190 (9th Cir. 1989) (citations and quotation marks omitted).

Regardless of whether the relief sought is judgment in their favor or a new trial, Defendants' Motion is not well-taken because the jury's verdict was amply supported by the record. The jury found that Defendants Lee and Swingle were deliberately indifferent to Plaintiff's serious medical needs when they recommended the discontinuation of his prescription for Tramadol, a drug that was working to manage Plaintiff's pain and from which he suffered no real side effects. This recommendation flew in the face of the standards set forth in the Prison's own Pain Management Guidelines, which called for starting with low doses of drugs and titrating upward until the pain had been effectively managed. Plaintiff's expert also testified that the step-wise approach to pain management employed by the prison guidelines was appropriate and that stopping an effective opioid prescription cold turkey was cruel and unusual. None of this evidence was controverted, and it provides the basis for the jury's verdict in Plaintiff's favor.

Defendants' arguments to the contrary are not persuasive. For example, Defendant's focus on the difference in medical opinions as to the effectiveness of long term opioid use and the attendant risks misses the mark.[8] The question before the jury was not whether Plaintiff should have been prescribed Tramadol in the first place; it was whether Defendants were deliberately indifferent in terminating the prescription in

///
///
///
///

---

[8] To the extent Defendants' argument that opioids are "ineffective" in treating chronic pain can be construed to mean that they do not alleviate pain, that argument is contrary to the record, from which the only reasonable inference is that Tramadol did control Plaintiff's pain. See ECF No. 256, at 5 ("[D]iscontinuing a course of medical treatment which is ineffective . . . does not constitute deliberate indifference.") (emphasis added).

contravention of the above medical standards.[9]  The medical opinions on the latter issue were consistent.[10]  Indeed, those opinions, which included the prison's Pain Management Guidelines themselves, were so consistent that the risk to Plaintiff was obvious, thus precluding any qualified immunity defense.  See Hope v. Pelzer, 536 U.S. 730, 741-42 (2002) (stating that "officials can still be on notice that their conduct violates established law even in novel factual circumstances" when the constitutional violation is obvious).

Nor was the verdict excessive.  This Court "allow[s] substantial deference to a jury's finding of the appropriate amount of damages."  Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 95 F.3d 1422, 1435 (9th Cir. 1996).  The jury's findings will be upheld "unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork."  Id.  None of these exceptions apply here.

///

///

---

[9] For this reason, Defendants' argument that the Court erred in admitting evidence that Defendant was eventually prescribed methadone after he was transferred to a new prison is again rejected.  That evidence was relevant to the system-wide practice of using opioids to manage chronic pain within California's prisons, and it did not prejudice Defendants because the question for the jury was not whether a new pharmaceutical regime should have been started, but whether an existing regiment should have terminated.  While there may be a difference of opinion as to when opioid prescriptions are appropriate, there is no dispute that medical standards do not contemplate discontinuing an effective treatment "cold turkey."

[10] In any event, the risks of long-term use identified by Defendants were not applicable to Plaintiff.  For example, Dr. Lee testified that Plaintiff's Tramadol prescription was discontinued because "it was not in [Plaintiff's] best interest to be on opioids."  ECF No. 252, at 300:13-18.  She elaborated that his "behaviors" and the potential side effects necessitated the change, and that it is a "good idea, even if a patient is on opioids, to try to back off or try nonopioid-based medications at different times just to see if [the patient] can get by without it."  Id. at 300:19-301:15.  First, this case may have been different had Defendants recommended that Plaintiff's primary care physician try "backing off" Plaintiff's prescription, as opposed to completely terminating the treatment.  Second, Plaintiff did not have any adverse side effects that would have warranted terminating his prescription in the first place.  Third, the "behaviors" alluded to above appear to be directed to prison management's concern with possible pill diversion.  While that concern is very real, it has no traction here where the only evidence of pill diversion Defendants provided was a single instance where Plaintiff was irritated and not cooperating with the attending nurse who was unable to confirm that he swallowed his pill.  This one instance is insufficient to raise any real concern that Plaintiff was using his medication for anything other than its intended purpose.  Finally, to the extent that Defendants speculated that Plaintiff might be targeted for his medication, id. at 318:7-319:2, nothing in the record indicated that Plaintiff had ever been or was potentially such a victim.

The jury in this case was instructed as follows as to determining damages:

> Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendants. You should consider the following.
>
> A. The nature and extent of the injuries.
>
> B. The loss of enjoyment of life experienced.
>
> C. The mental, physical, emotional pain and suffering experienced.
>
> It is for you to determine what damages, if any, have been proved. Your award must be based on evidence and not upon speculation, guesswork, or conjecture.

ECF No. 253, at 443:7-17. Given Plaintiff's testimony, which the Court found very credible, that without the Tramadol he felt as if he was undergoing surgery without anesthetic, that the pain was excruciating, and that a day without pain (or presumably with adequate pain medication) is a "miracle," this Court cannot say that the jury's damages award for mental, physical, and emotional pain and suffering and loss of enjoyment of life was "grossly excessive or monstrous."[11]

Moreover, the Court also did not err when it declined to instruct the jury that deliberate indifference requires more than mere negligence. The Court instructed the jury based on the Ninth Circuit's model instructions at the time, and deliberate indifference was adequately defined therein. Nothing further was warranted, and the Court was not required to accede to either side's request to cherry-pick language from the case law to modify those model instructions in their favor.

Finally, the Court is compelled to note that the record does not adequately reflect the time and consideration the jury in this case applied to deciding Plaintiff's claims. Deliberations spanned more time than it took to present evidence, and, by the time they were complete, the jurors' extensive notes covered every wall in the jury room. In the

---

[11] The Court takes judicial notice of the various cases and statutes Defendants contend mandate a lesser damages award. However, while those authorities might support the argument that the jury could have awarded Plaintiff less than it did, none of them compel that same result. Those arguments are thus rejected.

over twenty years that this Court has presided over trials, it has not witnessed a jury do such a thorough job of analyzing a case. While the quality of deliberations alone should not be relied upon to sustain a jury verdict, it is nonetheless commendable when a jury takes its role as seriously as did this one. Defendants' Motion is DENIED.

### B. Motion For Attorneys' Fees

The Civil Rights Attorney's Fees Awards Act of 1976 permits the award of attorney's fees in civil rights actions. 42 U.S.C. § 1988(b). The statute provides, in pertinent part: "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Id. A "prevailing party" under § 1988 is a party who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "Reasonableness" is the benchmark for attorney's fees awards under § 1988. 42 U.S.C. § 1988(b); Hensley, 461 U.S. at 433.

The "reasonableness" determination is a two-step process. First, the court should calculate a "lodestar" by "multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." McCown v. City of Fontana Fire Dep't, 565 F.3d 1097, 1102 (9th Cir. 2009). The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." Hensley, 461 U.S. at 431 (citations and quotation marks omitted). However, in calculating the lodestar, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" McCown, 565 F.3d at 1102 (citations omitted). Although district judges "need not, and should not, become green-eyeshade accountants," Fox v. Vice, 563 U.S. 826, 838 (2011), the court should provide some indication of how it arrived at its conclusions. See Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008) ("When the district court makes its award, it must explain how it came up with the amount."). As a general rule, in determining the lodestar

figure, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." Id. at 1112.  However, the party seeking an award of attorney's fees bears the burden of producing documentary evidence demonstrating "the number of hours spent, and how it determined the hourly rate(s) requested."  McCown, 565 F.3d at 1102.  Then the burden shifts to the opposing party to submit evidence "challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits."  Ruff v. County of Kings, 700 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010).

The second step of the "reasonableness" determination gives the court discretion to adjust the lodestar figure upward or downward based on an evaluation of several factors articulated by the Ninth Circuit in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975).  McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).  The Kerr factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 69-70; see also E.D. Cal. Local Rule 293(c) (identifying the same factors as relevant).  However, the court should exclude from its consideration factors that are irrelevant or already subsumed in the initial lodestar calculation.  McGrath, 67 F.3d at 252.  Because the lodestar figure is presumptively reasonable, "a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high."  Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations and quotations omitted).

11

### 1. Reasonable hourly rate

In determining attorney's fees under § 1988, the district court "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." Moreno, 534 F.3d at 1111 (internal citations omitted). Reasonable attorney's fees are calculated according to the prevailing market rate in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895 (1984). The "relevant legal community" in the lodestar calculation is generally the forum in which the district court sits. Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997). In this case, however, the prevailing rate is limited by statute. See 42 U.S.C. § 1997e(d)(3); 18 U.S.C. § 3006A. The parties agree that the appropriate rates are as follows based on when Plaintiff's counsels' services were performed:

| | |
|---|---|
| August 24, 2012 – August 31, 2013 | $187.50 |
| September 1, 2013 – February 28, 2014 | $165.00 |
| March 1, 2014 – December 31, 2014 | $189.00 |
| January 1, 2015 – December 31, 2015 | $190.50 |
| January 1, 2016 – present | $193.50 |

### 2. Reasonable hours expended

Plaintiff seeks to recover $136,878.45 in fees for work performed by Ikonte and his co-counsel:

| Period | Number of Hours | Hourly Rate | Amount |
|---|---|---|---|
| 8/24/12 – 8/31/13 | 130.5 | $187.50 | $24,468.75 |
| 9/1/13 – 2/28/14 | 69.20 | $165.00 | $11,418.00 |
| 3/1/14 – 12/31/14 | 89.70 | $189.00 | $16,953.30 |
| 1/1/15 – 12/31/15 | 83.40 | $190.50 | $15,887.70 |
| 1/1/16 – present | 352.20[12] | $193.50 | $68,150.70 |

Reply, ECF No. 268, at 7. Although they agree as to the applicable rates, the parties part ways as to the reasonableness of the total fees sought, with Defendants arguing that: (1) Plaintiff failed to produce contemporaneous time records or appropriate back-up documentation; (2) Plaintiff impermissibly seeks to recover fees incurred in prosecuting

---

[12] This includes 12 hours for drafting the fee motion.

12

unrelated unsuccessful claims; and (3) the fee request contains unnecessary and unreasonable charges. For the reasons that follow, some, but not all, of Defendants' contentions are persuasive.

As an initial matter, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433. The Court finds Plaintiff's statement of hours expended is sufficient for it to determine to a reasonable degree of accuracy what work was performed and whether the hours billed were reasonable.

That said, the Court agrees with Defendants that Plaintiff is not entitled to recover for fees incurred in prosecuting unrelated and unsuccessful claims. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." Id. at 440. On the other hand, "plaintiffs may receive fees under § 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That 'result is what matters . . . .'" Fox, 563 U.S. at 834 (quoting Hensley, 461 U.S. at 435). Under 42 U.S.C. § 1997e(d), any fee awarded must have been "directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded."

As Defendants point out, Plaintiff initiated this action against a number of additional Defendants from whom he was unable to garner any recovery. Plaintiff originally pursued causes of action against Defendants Kelso, Hoffman, Cummings, Pearsall, Pomozal, Royston, Stovall, Swingle, and Lee. The majority of these claims were weeded out through pretrial motion practice, and Defendants contend it follows that the time spent pursuing those claims was not directly and reasonably incurred in vindicating Plaintiff's rights.

///

More specifically, Plaintiff originally sought relief from Defendant Kelso in his capacity as a Receiver appointed by the court in Plata v. Schwarzenegger, 603 F.3d 1088 (9th Cir. 2010). These claims were disposed of by way of an eventually unopposed motion to dismiss, but not before Plaintiff's counsel expended 33.5 hours reviewing and annotating the motion and seeking an extension of time to respond.  The Court agrees with Defendants that prosecuting the claims against Defendant Kelso was not directly and reasonably related to Plaintiff's ultimate recovery. Those hours will be deducted from Plaintiff's requested recovery at a rate of $187.50 per hour.

The claims against Defendants Hoffman, Cummings, Pearsall, Pomozal, Royston, and Stovall, which arose out of injuries separate and apart from the discontinuation of his Tramadol prescription, were also unrelated to the ultimately successful claims against Defendants Lee and Swingle.  Defendants thus contend that "the time expended in deposing Cummings in Susanville on November 13, 2013, in reviewing and opposing the motions for summary judgment filed by Hoffman, Cummings, Pearsall, Pomozal, and Royston on February 14, 2014, and the time expended in proceeding to trial against Stovall on March 14, 2016, should be excluded."  Opp'n, at 7.  According to Defendants, however, the analysis is complicated by the fact that Plaintiff's counsel did not specify in their billing records how much of the time billed should have been allocated to each of the other Defendants.  The Court can nonetheless reasonably assess the billings to determine how much time should be allocated to prosecuting the successful versus unsuccessful claims.

On November 13, 2013, counsel logged 8 hours for deposing Defendants Lee and Cummings.  That entry will be reduced to 2.2 hours (at $165 per hour) to eliminate recovery for a reasonable amount of time that may be allocated to Cummings' deposition.[13]  In addition, the 18.5 hours expended to prepare for these depositions will be reduced by half, despite the fact that it took over twice as long to depose Defendant Lee as it did to depose Cummings.  Absent some better indication of how much time was allocated to the separate factual claims against

---

[13] The Court based this reduction on Defendant's evidence showing that Defendant Lee's deposition began at 9:05 a.m. and concluded at 11:15 a.m.  See Bragg Decl., Ex. C, ECF No. 263-1.

Cummings, the Court finds that 9.25 hours of preparation time at $165 hours would have been appropriate.

In addition, Defendants challenge the time Plaintiff's counsel spent reviewing and opposing the motions for summary judgment filed by Hoffman, Cummings, Pearsall, Pomozal, and Royston from February 14, 2014 to April 24, 2014. The difficulty with this argument is that Plaintiff's opposition was successful as to Defendants Lee and Swingle, and he is thus entitled to recover a portion of the fees incurred in defending against Defendants' arguments. Moreover, many of the tasks associated with opposing the motion for summary judgment were necessary regardless of how many claims survived (e.g., the research and drafting required on a number of claims was overlapping). Despite the fact that the Court concludes some of the costs are indeed recoverable, again absent more specificity in Plaintiff's time records, the Court determines it is reasonable to reduce the fees sought with relation to the summary judgment motion by half. Plaintiff's counsel indicated a total of 31 hours from February 2014 and 87.7 hours from March and April 2014 went toward opposing Defendants' Motion for summary judgment. Based on the foregoing, those hours will be reduced by 15.5 hours at a rate of $165 and 43.85 hours at a rate of $189.

Defendants similarly challenge as non-recoverable the time Plaintiff spent in trying his claims against Defendant Stovall. While the Court agrees that the time spent prosecuting Plaintiff's claim against that Defendant was not directly and reasonably incurred in vindicating his rights as to the Tramadol, it is also clear to the Court that counsels' trial time, even with more exacting time records, could not be precisely delineated between the Lee and Swingle claims and the claim against Stovall. Because so much of the time expended on preparing for trial would have been necessary even if the claim against Defendant Stovall had not been joined (e.g., preparing pretrial documents, drafting opening statements and closing arguments, preparing for direct and cross-examination, etc.) the Court is not persuaded that a substantial reduction in the fee award is warranted. Plaintiff requests recovery for a total of 340.6 hours for trial-related work. Based on a review of the record, the Court concludes that a 10% reduction of 34.06 hours at $193.50 is reasonable to account for time spent on the unsuccessful claim against Defendant

Stovall, while still permitting Plaintiff the allowable recovery for overlapping work that directly affected the vindication of his rights.

The Court also agrees with Defendants that Plaintiff cannot recover for time spent on tasks that were duplicative, cumulative or unnecessary. Van Gerwen, 214 F.3d at 1045. Defendants challenge a number of line items on this basis.

First, Defendants contend that the 1.4 hours Ireogbu billed on March 11, 2016, for discussing trial strategy, opening statements and closing arguments, is unsupported by the record because neither Ikonte nor Akudinobi billed any corresponding time on that day. Given the lack of any corresponding entries from co-counsel, the Court agrees. Plaintiff's counsels' time will be reduced by an additional 1.4 hours at $193.50 per hour.[14]

Second, Defendants take issue with 38 hours billed on February 18, 19, 23, 25, and 28, 2016, and March 1, 2016, for preparing and finalizing pretrial documents. According to Defendants, since the billing notes also contain other entries for preparing specific trial documents (e.g., exhibit lists, witness lists, jury instructions, verdict forms, voir dire questions, statement of the case), the lack of detail could lend itself to duplicative recovery. The Court is not persuaded that the time expended was unreasonable or that it was not directly related to the prosecution of Plaintiff's claims. Despite the lack of detail in some of the line items, given the age of the case, the numerous motions that were filed, and the fairly tangled history of Plaintiff's claims against the various Defendants, the Court is satisfied that substantial time was required for trial preparation. Especially since the Court has already reduced all time billed for trial preparation by 10%, it finds that no further reduction is warranted.

Third, Defendants challenge the 21.2 hours Ikonte and Akudinobi spent drafting the cross-examination of witnesses for trial arguing that "[s]ince the time entries do not specify the names of the witnesses, the Court cannot determine if the testimony of the witnesses

---

[14] Defendants' other arguments going to Plaintiff's alleged over-staffing of this case are not well taken. As indicated in the remainder of this order, the Court has reduced the award for any unreasonable or unnecessary charges, but it finds the remaining hours expended to be reasonable.

related to the issues litigated, whether the witnesses actually testified at trial, or if the time spent on preparing the cross-examination was reasonable." Opp. at 5. In addition, according to Defendants, "it is unclear whether co-counsel prepared cross-examination of the same witness, thereby generating improper duplicative billing entries." Id. As with Defendants' last argument, the Court is persuaded that the amount of time expended in preparing for what turned out to be a very successful trial, and one where the parties presented enough evidence that it took the jury themselves several days to sift through the documents, was appropriate. Again, the Court's decision is influenced by the fact that it already reduced all hours billed for trial by 10%.

Fourth, the Court agrees that hours expended to respond to an Order to Show Cause perpetuated by Plaintiff's counsel's failure to appear at a hearing should not be charged against Defendants. Accordingly, the fees sought shall be reduced by 7.9 hours at a rate of $187.50.

Fifth, the Court declines to reduce the hours Plaintiff's counsel recorded for the deposition of his own client simply because the deposition itself lasted only one hour. The Court is confident that the time indicated is appropriate to allow for travel to and from the deposition and for counsel to have met with Plaintiff outside of the precise time when the deposition was being transcribed.

Sixth, the Court will nonetheless reduce Plaintiff's fee award by 21.8 hours at a rate of $190.50 for the preparation for the deposition of Dr. Barnett. Since the deposition was never conducted, albeit because counsel had a personal emergency, the Court finds the preparation was not necessary to the prosecution of Plaintiff's successful claims.

Seventh, the Court concludes that ten hours of time billed to attend a one-hour Final Pretrial Conference is unreasonable. Given that counsel travelled from Los Angeles, the Court determines a total of 5 hours is appropriate. Accordingly, Plaintiff's requested fee award will be reduced by 5 hours billed at a rate of $193.50.

Finally, the Court is not persuaded that 6.6 hours of time for "jury watch" was necessary for each of the two full days the jury was deliberating. Absent some convincing showing by Plaintiff's counsel indicating he had no ability to work on other cases while traveling, especially

when his co-counsel's office is located in Sacramento, the Court cannot fathom how that could be possible. Accordingly, the fees sought will be further reduced by 13.2 hours at a rate of $193.50.

### 3. Recoverable costs

As part of the fee award, Plaintiff also seeks an additional $13,998.04 in reimbursable costs. Defendants challenge Plaintiff's' requests for mileage reimbursement and expert fees. Defendants contend that mileage sought for Plaintiff's counsel to visit his client should be reduced because his travel logs reference eight trips, but his time statements indicate he only travelled six times. The Court is satisfied that Plaintiff's relatively minor mileage expenses are appropriate. In addition, the Court is similarly confident that the expert billings are appropriate and that his testimony directly contributed to Plaintiff's success at trial. Defendants' request for a cost reduction is denied.

### 4. Apportionment of the judgment

Pursuant to 42 U.S.C. § 1997e(d)(2):

> Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant."

Given this statutory mandate, twenty-five percent of the judgment entered in favor of Plaintiff shall go to pay the fees awarded.

///

///

///

///

///

///

//

///

**CONCLUSION**

For the reasons just stated, it is hereby ordered that:

1. Defendants' Motion for Judgment as a Matter of Law, or in the Alternative, for New Trial (ECF No. 256) is DENIED;
2. Plaintiff's Motion for Attorneys' Fees (ECF No. 258) is GRANTED in part and DENIED in part, consistent with the foregoing, and Plaintiff is awarded $101,251.44 in attorneys' fees and $13,998.04 in associated costs;
3. Twenty-five percent of Plaintiff's judgment shall go to pay the aforementioned fee award; and
4. Plaintiff's pro se Motions (ECF Nos. 271-274) are DENIED as improperly before the Court.

IT IS SO ORDERED.

Dated: March 21, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE